IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                        Case Nos.:      4:14cr82/RH/CAS
                                                          4:16cv581/RH/CAS

BARBARA ANN THOMPSON,
     Defendant.

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, and the Government's response in opposition. (ECF Nos. 122, 140.) The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After reviewing the record and the arguments presented, it is the opinion of the undersigned that Defendant's motion should be denied without an evidentiary hearing. See Rules Governing Section 2255 Cases 8(a) and (b).

## BACKGROUND

Barbara Ann Thompson was charged in a six-count indictment with conspiracy to commit wire fraud (Count One), wire fraud (Counts Two – Five), and aggravated identity theft (Count Six). (ECF No. 1.) The charges arose from Ms. Thompson's participation in a scheme to submit fraudulent claims for income allegedly lost due to the BP Deepwater Horizon oil spill that began in April of 2010.

Ms. Thompson submitted a claim for compensation to the Gulf Coast Claims Facility ("GCCF") which had been set up to compensate victims of the oil spill for losses of income. Individuals who could show that their income decreased after the oil spill, by filling out a claim form and providing documentation of income, could receive payment. Ms. Thompson faxed copies of what purported to be payroll account check stubs and other documents from Workforce Plus to substantiate her claim. Logs from Workforce Plus show that she signed in to use the fax machine on multiple occasions. However, multiple falsified documents were used to support Thompson's claims to GCCF. Ms. Thompson submitted falsified claims in behalf of other individuals as well.

Evidence presented at trial showed that Ms. Thompson was in jail from March 26 to June 9, 2010, at a time period when she claimed to have been employed, and that during her initial intake interview at the jail she stated that she was unemployed and had no income.  On April 12, 2010, while she was in jail, she also filed an application for food assistance benefits on which she stated that she had no income from any source.

A jury convicted her as charged.  (ECF No. 64.)

The final Presentence Investigation Report ("PSR") reflected that Ms. Thompson had a total offense level of 13, and a criminal history category of III.  (ECF No. 76, PSR ¶¶ 25-33, 39-41.)  The applicable guidelines range was 18 to 24 months' imprisonment.  (*Id.,* PSR ¶ 95.)  However, Count Six carried a mandatory minimum term of two years imprisonment which was to be served consecutively to any other counts of conviction.  (*Id.*, PSR ¶ 94.)  The court sentenced Ms. Thompson to concurrent terms of one day imprisonment on Counts One through Five followed by the mandatory 24-month term on Count Six, and three years of supervised release.  (ECF Nos. 97, 107.)  She was also ordered to pay $35,600 in restitution.  Although sentencing took place on October 2, 2015, the court allowed Ms. Thompson to report to her designated institution on July 11,

2016, to allow her time to complete a series of surgeries related to her breast cancer. Bureau of Prisons Records indicate that Ms. Thompson was released from the custodial portion of her sentence on April 6, 2018, although she has not filed a notice of change of address with the court.

The Eleventh Circuit affirmed Ms. Thompson convictions and sentences, but only after she filed the instant motion to vacate. (ECF Nos. 122, 129.)[1] Ms. Thompson raises four grounds for relief in her § 2255 motion, each of which the Government argues is without merit. The court concurs.

## ANALYSIS

<u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief

---

[1] At this juncture, this procedural irregularity has no bearing on her § 2255 motion. Additionally, the court notes that Ms. Thompson's motion has not been rendered moot by her release because she challenges alleged constitutional deficiencies in the proceedings which could have affected the fact of her conviction.

under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of

Case Nos.: 4:14cr82/RH/CAS; 4:16cv581/RH/CAS

ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).

In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry her burden on either of the two prongs.  *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional

assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been

different.  *Strickland*, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  *Glover v. United States*, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation

of her constitutional rights based on her attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped her case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." See 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove she is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that

amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

<u>Ground One</u>

Ms. Thompson first contends that she was prejudiced at trial because her attorney, Joseph DeBelder, did not introduce allegedly exculpatory evidence she had provided to him.   She contends that she had tax returns that would have proven that she was employed both before and after the oil spill at Barwick Seafood Company, and was thus entitled to reimbursement for lost earnings as she had claimed.

Counsel acknowledges having received the tax records from Ms. Thompson.   (ECF No. 140-1 at 2.)   However, he states that he chose not to introduce the records, which are attached as an exhibit to his affidavit, because the information was unfavorable to his client.   First, counsel notes that the records in question did not indicate how Ms. Thompson earned the income reflected on the returns.   Second, and more significantly, the tax returns reflected that Ms. Thompson's income increased after the oil spill, rather than decreased.   Mr. DeBelder was concerned that the jury would view the records as proof that Ms. Thompson was not damaged by the oil

spill and thus not entitled to any of the money she sought to claim.   (ECF No. 140-1 at 2.)   Counsel's decision regarding the introduction of tax records was not unreasonable, and thus Ms. Thompson has not shown that counsel's performance was constitutionally deficient.

Ground Two

Ms. Thompson next contends that her attorney refused to obtain evidence about how she signed her name from Work Force Plus sign in sheets, which evidence would have proven that one of the signatures on Government's Exhibit 23 was not hers.

Exhibit 23, comprised of Workforce Plus logs, contained a signature for "B. Thompson."   Ms. Thompson now contends that she never signed her name this way and that if counsel had obtained samples of her signature he could have proven that this was not her signature, and presumably, that she had not sent a facsimile on the date in question. The Government states that there was no testimony that Ms. Thompson had personally signed any of the documents in Exhibit 23, and that in fact the records custodian testified that no one verified the identity of the person who signed in on the logs.   (ECF No. 93 at 71-72.)

The Government also notes that there were multiple exhibits in the record containing what was undisputedly Ms. Thompson's signature including the final claim payment form (Government Exh. 13), checks and bank records (Government Exhs. 8, 14, 19 & 20), and records from the Wakulla County Sheriff's Office (Government Exh. 22).   Obtaining additional samples of Ms. Thompson's signatures would have offered nothing to the defense.

Finally, the Government observes that there was never any dispute that Ms. Thompson was responsible for filing her own oil spill claim, using her own bank account, mailing address and email address to file her claim and supporting documentation.   The fact that someone else may have written her name on the log at Workforce Plus on one of the occasions she used the fax machine is not exculpatory.

Ms. Thompson has not shown that no reasonable attorney would have acted as counsel did or that counsel's performance was constitutionally deficient.   No relief is warranted.

Ground Three

Ms. Thompson's third allegation is that Mr. DeBelder "spoke with [her] co-defendant and spoke with the prosecutor" about her case.   Her attorney

Case Nos.: 4:14cr82/RH/CAS; 4:16cv581/RH/CAS

denies having spoken to her co-defendant before the court proceedings (ECF No. 140-1 at 3), a position Ms. Thompson has not rebutted.  Even if he had, Ms. Thompson has not suggested how the alleged communications were prejudicial to her.

As to Mr. DeBelder speaking to the prosecutor about the case, it is normal and customary for the prosecutor and defense counsel to communicate, for instance, about expected trial evidence or testimony of Government witnesses.  Mr. DeBelder's affidavit unequivocally states that he "never shared any attorney-client privileged information relating to my representation of Ms. Thompson with anyone outside the confines of the privilege, including the Assistant United States Attorney."  (ECF No. 140-1 at 3.)  Ms. Thompson has shown neither deficient performance nor prejudice with her conclusory allegations.

Ground Four

In Ms. Thompson's final ground for relief she claims that she "was ask (sic) not to testify, and I had a right to, and was told not to."  In an attachment to the motion she asserts her belief that the outcome of the trial would have been different had she been allowed to testify.  (ECF No. 122 at 15-17.)

Ms. Thompson was clearly aware of her right to testify. The court advised her outside of the presence of the jury as follows:

> This is probably a good time for me to talk with Ms. Thompson for just a minute. I need to tell you about a right that you have. Mr. DeBelder has probably told you the same thing. You have the right to testify in the case, if you wish to testify. You heard me tell the jury during the jury-selection process, if you choose not to testify, I'll tell the jury that they should not draw an inference against you. But that doesn't tell you whether you should testify or should not testify. It's your decision. You should consider his advice on the subject, but it is your decision. So, if you want to testify, you can; and if you don't want to testify, you don't have to. I'll probably check back with you at some point and confirm what decision you have made on that subject. But if I don't check back with you, let me make it clear to you now that it's your decision; and if Mr. DeBelder does not call you as a witness, and you went to testify, you need to say you want to testify, and you'll get to testify.

(ECF No. 93 at 113.)

The court later asked whether Ms. Thompson would testify, and her attorney stated "We have a preliminary decision that she won't be, but that's still preliminary. Obviously I told her it's her decision right to the point." (ECF No. 93 at 231.) The court noted that the jury instructions would be prepared for a nontestifying defendant, but that Ms. Thompson was still free to change her mind. The defense rested without calling Ms. Thompson, and the court made no further inquiry. (ECF No. 94 at 37).

Its instructions to the jury indicated that it should not consider the defendant's decision not to testify in reaching its verdict.  (ECF No. 118 at 27.)

Counsel now states in his affidavit that prior to the defense resting, he confirmed with his client that she did not want to testify.  (ECF No. 140-1 at 2.)  This sworn statement remains unrebutted due to Ms. Thompson's lack of reply.  Ms. Thompson has not shown that she was "prevented" from testifying or that her constitutional rights were violated, and she is not entitled to relief.

### Conclusion

For all of the foregoing reasons, the court finds that Ms. Thompson has not shown that any of the claims raised in her motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has she shown that an evidentiary hearing is warranted.  The motion should be denied in its entirety.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (ECF No. 122) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 2nd day of October, 2018.

Case Nos.: 4:14cr82/RH/CAS; 4:16cv581/RH/CAS

        s/ Charles A. Stampelos
        **CHARLES A. STAMPELOS**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 4:14cr82/RH/CAS; 4:16cv581/RH/CAS